IN THE IOWA DISTRICT COURT FOR WOODBURY COUNTY

| | |
|---|---|
| CEDAR RAPIDS BANK AND TRUST COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MAKO ONE CORPORATION,<br>BADGEROW JACKSON LLC,<br>BADGEROW JACKSON MT LLC,<br>BRUCE DEBOLT, AND<br>ARNOLD CELICK, JR., as trustee of the ARNOLD CELICK, JR. AND NANCY DAUMAN CELICK REVOCABLE LIVING TRUST,<br><br>Defendants. | EQUITY NO. EQCV175198<br><br><br>**ORIGINAL NOTICE** |

To the Above-Named Defendants:

You are hereby notified that there is now on file in the office of the clerk of the above court, a Petition in the above--entitled action, a copy of which Petition is attached hereto. The plaintiff's attorney is Richard H. Moeller of Berenstein, Moore, Heffernan, Moeller & Johnson, L.L.P., whose address is 300 U.S. Bank Building, P.O. Box 3207, Sioux City, Iowa 51102. Phone: (712) 252-0020. Fax: (712) 252-0656.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Woodbury County, at the county courthouse at 620 Douglas Street, Room 620, Sioux City, IA 51101, in Sioux City, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

You are further notified that the District Court for Woodbury County utilizes electronic filing under the Electronic Document Management System, located at https://www.iowacourts.state.ia.us/EFile/ , and for the general rules and information on

1

electronic filing and the protection of personal information you are directed to the Iowa Judicial Branch website at http://www.iowacourts.gov/eFiling/Training_Documents/ .

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 712-279-6035 (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

                                                      Clerk of the Above Court
                                                      Woodbury County Courthouse
                                                      Sioux City, Iowa

**IMPORTANT**

YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS

13362538v1

IN THE IOWA DISTRICT COURT FOR WOODBURY COUNTY

| | |
|---|---|
| CEDAR RAPIDS BANK AND TRUST COMPANY,<br><br>    Plaintiff,<br><br>V.<br><br>MAKO ONE CORPORATION,<br>BADGEROW JACKSON LLC,<br>BADGEROW JACKSON MT LLC,<br>BRUCE DEBOLT, AND<br>ARNOLD CELICK, JR., as trustee of the ARNOLD CELICK, JR. AND NANCY DAUMAN CELICK REVOCABLE LIVING TRUST,<br><br>    Defendants. | EQUITY NO. _____<br><br><br>**PETITION IN EQUITY** |

**NOTICE**

THE PLAINTIFF HAS ELECTED FORECLOSURE WITHOUT REDEMPTION. THIS MEANS THAT THE SALE OF THE MORTGAGED PROPERTY WILL OCCUR PROMPTLY AFTER ENTRY OF JUDGMENT UNLESS YOU FILE WITH THE COURT A WRITTEN DEMAND TO DELAY THE SALE. IF YOU FILE A WRITTEN DEMAND, THE SALE WILL BE DELAYED UNTIL TWELVE MONTHS (OR SIX MONTHS IF THE PETITION INCLUDES A WAIVER OF DEFICIENCY JUDGMENT) FROM ENTRY OF JUDGMENT IF THE MORTGAGED PROPERTY IS YOUR RESIDENCE AND IS A ONE-FAMILY OR TWO-FAMILY DWELLING OR UNTIL TWO MONTHS FROM ENTRY OF JUDGMENT IF THE MORTGAGED PROPERTY IS NOT YOUR RESIDENCE OR IS YOUR RESIDENCE BUT NOT A ONE-FAMILY OR TWO-FAMILY DWELLING. YOU WILL HAVE NO RIGHT OF REDEMPTION AFTER THE SALE. THE PURCHASER AT THE SALE WILL BE ENTITLED TO IMMEDIATE POSSESSION OF THE MORTGAGED PROPERTY. YOU MAY PURCHASE AT THE SALE.

IF YOU DO NOT FILE A WRITTEN DEMAND TO DELAY THE SALE AND IF THE MORTGAGED PROPERTY IS YOUR RESIDENCE AND IS A ONE-FAMILY OR TWO-FAMILY DWELLING, THEN A DEFICIENCY JUDGMENT WILL NOT BE ENTERED AGAINST YOU. IF YOU DO FILE A WRITTEN DEMAND TO DELAY THE SALE, THEN A DEFICIENCY JUDGMENT MAY BE ENTERED AGAINST YOU IF THE PROCEEDS FROM THE SALE OF THE MORTGAGED PROPERTY ARE INSUFFICIENT TO SATISFY THE AMOUNT OF THE MORTGAGE DEBT AND COSTS.

IF THE MORTGAGED PROPERTY IS NOT YOUR RESIDENCE OR IS NOT A ONE-FAMILY OR TWO-FAMILY DWELLING, THEN A DEFICIENCY JUDGMENT MAY

**BE ENTERED AGAINST YOU WHETHER OR NOT YOU FILE A WRITTEN DEMAND TO DELAY THE SALE.**

Cedar Rapids Bank and Trust (the "Plaintiff" or the "Bank"), as and for its causes of action against Defendants Mako One Corporation ("Mako"), Badgerow Jackson LLC ("Badgerow"), Badgerow Jackson MT LLC ("MT"), Bruce DeBolt ("DeBolt"), and the Arnold Celick, Jr. and Nancy Dauman Celick Revocable Living Trust (the "Trust"), states:

## THE PARTIES

1. The Bank is an Iowa state-charted banking corporation having an address of 500 1st Avenue Northeast, Cedar Rapids, Iowa 52401.

2. Mako is a Delaware corporation with an address of c/o Global Facilities Development, P.O. Box 235600, Encinitas, California 92023, Attention Bruce DeBolt.

3. Badgerow is a Delaware limited liability company with an address of c/o Global Facilities Development, P.O. Box 235600, Encinitas, California 92023, Attention Bruce DeBolt.

4. MT is a Delaware limited liability company with a mailing address of c/o Global Facilities Development, P.O. Box 235600, Encinitas, California 92023 Attn: Mr. Bruce DeBolt.

5. DeBolt is an individual with a last known address of P.O. Box 235600, Encinitas, California 92023.

6. The Trust is a California trust with a last known address of 9854 National Boulevard, #241, Los Angeles, California 90034.

## BACKGROUND

**The Original Financing Transaction**

*The Bonds*

7. To evidence a bond-financing transaction, the Bank, Badgerow, Mako and DeBolt entered into that certain Trust Indenture dated August 30, 2013 (the "Indenture"). A true and correct copy of the Indenture is attached hereto as **Exhibit 1**.

8. To evidence Badgerow's obligation to repay funds advanced in accordance with the Indenture, Badgerow and the Bank executed that certain Badgerow Building Historic Tax Credit Revenue Bonds (Series A) dated August 30, 2013, in the original principal amount of $6,000,000 (the "Bond"). A true and correct copy of the Bond is attached hereto as **Exhibit 2**.

*The Collateral*

9. To secure Badgerow's obligations under Bond and the Indenture, Mako executed and delivered to the Bank that certain Mortgage, Assignment of Rents, Fixture Filing and Security Agreement dated August 30, 2013, and recorded in the Woodbury County Recorder's Office on September 3, 2013, as Document Number 3152 (the "Fee Mortgage"), pursuant to which Mako granted the Bank a mortgage lien against and security interest in all of the property described therein (the "Fee Property"). A true and correct copy of the Fee Mortgage is attached hereto as **Exhibit 3**.

10. The Fee Property consists mainly of a vacant building designed for a restaurant or retail store on the first floor and a data center on floors 2-12. If rehabilitated in accordance with certain historic-renovation requirements, the Fee Property will generate millions of dollars in federal historic-rehabilitation tax credits ("Federal Tax Credits"), described in Section 47 of Title 26 of the Internal Revenue Code of 1986 (the "Code"), from the United States, and state tax credits for certified historic structures allowable pursuant to Chapter 404A of the Iowa code ("State Tax

Credits," and together with the Federal Tax Credits, the "Tax Credits") from the State of Iowa. The historic rehabilitation has been not been completed.

11. To further secure Badgerow's obligations under the Bond and the Indenture, Badgerow executed and delivered to the Bank that certain Leasehold Mortgage, Assignment of Rents, Fixture Filing and Security Agreement dated August 30, 2013, and recorded in the Woodbury County Recorder's Office on September 3, 2013, as Document Number 3154 (the "Leasehold Mortgage"), pursuant to which Badgerow assigned to the Bank all of Badgerow's interest in the property described therein (the "Leasehold Property"), which includes all rights under that certain Master Lease dated March 21, 2012 (the "Master Lease"). A true and correct copy of the Leasehold Mortgage and of the Master Lease are attached hereto as **Exhibits 4** and **5**, respectively.

12. The Master Lease is between Mako as landlord and Badgerow as tenant, whereby Mako leased to Badgerow floors 2–12 of the Fee Property. Leasing less than all of the Fee Property under the Master Lease reduces the value of the Fee Property to a third-party.

13. Badgerow and MT then entered into that certain Lease dated May 31, 2012, where Badgerow is the tenant/landlord and MT is the subtenant, pursuant to which Badgerow leased to MT floors 2–12 of the Fee Property (the "Sublease").

14. The Fee Property and the Leasehold Property may be referred to collectively as the "Property."

15. To further secure Badgerow's obligations to the Bank, including those under the Bond and the Indenture, Badgerow executed and delivered to the Bank that certain Pledge Agreement (Accounts) dated August 30, 2013 (the "Accounts Pledge"), pursuant to which Badgerow granted the Bank a security interest in, among other things, the accounts identified

therein (the "Accounts"). A true and correct copy of the Accounts Pledge are attached hereto as **Exhibit 6**.

16. To further secure Badgerow's obligations under the Bond and the Indenture, Badgerow executed and delivered to the Bank that certain Pledge Agreement (Tax Credits) dated August 30, 2013 (the "Tax-Credits Pledge"), pursuant to which Badgerow and Mako granted the Bank a security interest in, among other things, the State Tax Credits. A true and correct copy of the Tax-Credits Pledge is attached hereto as **Exhibit 7**.

17. To secure all of Badgerow's and DeBolt's obligations to the Bank, including those under the Bond, the Indenture, and the DeBolt Guaranty (as defined below), DeBolt executed and delivered to the Bank that certain Pledge Agreement (Borrower) dated August 30, 2013 (the "Pledge of Badgerow Membership Interests"), pursuant to which DeBolt granted the Bank a security interest in, among other things, DeBolt's membership units in Badgerow (the "Badgerow Membership Interests"). A true and correct copy of the DeBolt Pledge Agreement is attached hereto as **Exhibit 8**.

18. To further secure Badgerow's obligations under the Bond and the Indenture, DeBolt and the Trust executed and delivered to the Bank that certain Stock Pledge Agreement dated as of August 30, 2013 (the "Pledge of Mako Stock"), pursuant to which DeBolt and the Trust granted the Bank a security interest in, among other things, their stock in Mako One (the "Mako Stock"). A true and correct copy of the Pledge of Mako Stock is attached hereto as **Exhibit 9**.

19. To further secure Badgerow's obligations under the Bond and the Indenture, Badgerow executed and delivered to the Bank that Assignment of Project Agreements, Permits and Contracts dated August 30, 2013 (the "Assignment of Project Agreements"), pursuant to which Badgerow assigned to the Bank all of Badgerow's interest in the agreements, contracts, and related

documents identified therein (the "Project Documents"). A true and correct copy of the Assignment of Project Agreements is attached hereto as **Exhibit 10**.

20. To further secure Badgerow's obligations under the Bond and the Indenture, MT executed and delivered to the Bank that certain Assignment of Capital Contributions (Federal) dated August 30, 2013 (the "Assignment of Contributions"), pursuant to which MT assigned to the Bank all of MT's interest in, among other things, capital contributions paid and to be paid (the "MT Capital Contributions") by Chevron U.S.A. Inc. ("Chevron"), the 99.99% member of MT, (or any other investor member) under that certain Amended and Restated Operating Agreement of MT dated May 31, 2012 (as amended and restated by that certain Second Amended and Restated Operating Agreement dated February 26, 2015, the "MT Operating Agreement"). A true and correct copy of the Assignment of Contributions and the MT Operating Agreement are attached hereto as **Exhibits 11** and **12**, respectively.

*The Tax Credits and Capital Contributions as Originally Contemplated*

21. Pursuant to the terms of the MT Operating Agreement, Chevron is obligated to make its capital contributions to MT only upon the satisfaction of certain conditions, as described in more detail in the MT Operating Agreement.

22. Pursuant to the Amended and Restated Operating Agreement of Badgerow dated as of March 21, 2012 (the "Badgerow Operating Agreement"), MT, as a 10% member of Badgerow, is obligated to make its capital contributions to Badgerow in the same amount and at the same time that Chevron makes its capital contributions to MT under the MT Operating Agreement. A true and correct copy of the Badgerow Operating Agreement is attached hereto as **Exhibit 13**.

23. Pursuant to that certain HTC Pass-Through Agreement dated as of May 31, 2012, between Badgerow and MT ("Pass-Through Agreement"), Badgerow agreed to file an election

6

with respect to the Property to pass through the Federal Tax Credits generated by the Property to MT pursuant to Section 50(d) of the Code and the regulations relating thereto. If MT receives the Federal Tax Credits under the Pass-Through Agreement, and if the several payment conditions described in the MT Operating Agreement are satisfied, the Federal Tax Credits would be allocated to Chevron pursuant to the MT Operating Agreement. A true and correct copy of the Pass-Through Agreement is attached hereto as **Exhibit 14**.

*Guaranties*

24.  To guaranty Badgerow's obligations under the Bond and Indenture, Mako One executed and delivered to the Bank that certain Guaranty (Full Payment And Performance) made as of August 30, 2013 (as reaffirmed from time to time, the "Mako Guaranty"). A true and correct copy of the Mako Guaranty is attached hereto as **Exhibit 15**.

25.  Pursuant to the Fee Mortgage, the Fee Property also secures Mako's obligations under the Mako Guaranty.

26.  To further guaranty repayment of the Bond, DeBolt executed and delivered to the Bank that certain Guaranty (Full Payment And Performance) made as of August 30, 2013 (as reaffirmed from time to time, the "DeBolt Guaranty"). A true and correct copy of the DeBolt Guaranty is attached hereto as **Exhibit 16**.

27.  Pursuant to the Pledge of Badgerow Membership Interests, the Badgerow Membership Interests also secures DeBolt's obligations under the DeBolt Guaranty.

*Amendments to the Transaction Documents*

28.  Pursuant to that certain First Supplement to Indenture of Trust dated June 25, 2014, the Bond and Indenture were amended to, among other things, change the maturity date of the Bond and Indenture to November 15, 2014. A true and correct copy of the First Supplement is attached hereto as **Exhibit 17**.

29. Pursuant to that certain Second Supplement to Indenture of Trust dated November 12, 2014, the Bond and Indenture were amended to, among other things, change the maturity date of the Bond and Indenture to February 13, 2015. A true and correct copy of the Second Supplement is attached hereto as **Exhibit 18**.

30. Pursuant to that certain Third Supplement to Indenture of Trust dated February 13, 2015, the Bond and Indenture were amended to, among other things, change the maturity date of the Bond and Indenture to June 12, 2015. A true and correct copy of the Third Supplement is attached hereto as **Exhibit 19**.

31. Pursuant to that certain Fourth Supplement to Indenture of Trust dated June 12, 2015, the Bond and Indenture were amended to, among other things, change the maturity date of the Bond and Indenture to September 12, 2015. A true and correct copy of the Fourth Supplement is attached hereto as **Exhibit 20**.

32. Pursuant to that certain Fifth Supplement to Indenture of Trust dated September 12, 2015, the Bond and Indenture were amended to, among other things, change the maturity date of the Bond and Indenture to March 12, 2016. A true and correct copy of the Fifth Supplement is attached hereto as **Exhibit 21**.

33. Pursuant to that certain Sixth Supplement to Indenture of Trust dated June 12, 2016, the Bond and Indenture were amended to, among other things, change the maturity date of the Bond and Indenture to December 12, 2016. A true and correct copy of the Sixth Supplement is attached hereto as **Exhibit 22**.

34. All documents and instruments identified above, and all documents and instruments related to all the above, may be collectively referred to as the "Loan Documents."

**Defaults**

35.  Badgerow, Mako and DeBolt (jointly and severally, the "Obligors") defaulted under the Loan Documents by, among other things, failing to pay all amounts due under the Bond upon the Bond's maturity on December 12, 2016 (the "Maturity Date").

36.  Pursuant to a cross-default provision, the failure to make payments when due (which is a default under the Indenture) is also a default under the Assignment of Contributions, thereby putting MT in default.

37.  Badgerow is also in default under the Master Lease for failing to make rental payments to Mako.

38.  MT is in default under the Sublease for failing to make rental payments to Badgerow.

39.  Badgerow and/or MT, and/or their respective managers, have failed to satisfy the conditions set forth in the MT Operating Agreement to cause Chevron to make its capital contributions to MT as described in the MT Operating Agreement (collectively, the "Payment Conditions"), including, but not limited to:

    a.  failing to complete the historic rehabilitation of the Property;

    b.  defaulting under the Indenture and the Bond;

    c.  failing to pay property taxes associated with the Property;

    d.  failing to fully repay all secured debt associated with Badgerow and the Property; and

    e.  failing to provide a final Part 3 Approval certifying the completion of the historic rehabilitation of the Property in accordance with the historic rehabilitation requirements described in more detail in the MT Operating Agreement.

40. As a result of the foregoing, Chevron has not made its capital contributions to MT and MT has not made its capital contributions to Badgerow. Chevron has indicated that it does not intend to fund its capital contributions unless all of the Payment Conditions have been met.

41. Completing the historic rehabilitation of the Property in accordance with all historic rehabilitation requirements is a necessary condition to Badgerow receiving the Tax Credits, and transferring the Tax Credits to an investor is the only way to monetize the Tax Credits for purposes of repaying the amounts owed under the Indenture and the Bond. However, under the current circumstances, even if the historic rehabilitation is completed, not all of the Payment Conditions can be satisfied. For example, the condition described under paragraph 29(E) above cannot be satisfied because even if the historic rehabilitation of the Property was complete, not all of the debt associated with the Property would be repaid. There is no possibility, absent an infusion of additional capital or loans, that the Bank will be repaid in full without a different investor receiving the Federal Tax Credits under different conditions.

42. Because, among other things, Badgerow has not completed the historic rehabilitation of the Property and is in default under the Indenture and the Bond, the issuance of the Tax Credits from the United States and the State of Iowa is at risk, and the monetary value of the Tax Credits is in danger of not being realized. If the Tax Credits are not received by Badgerow and monetized by an investor, the Bank will lose a significant portion of the collateral under the Indenture and the Bond

43. Although not required, pursuant to a letter dated March 28, 2017 (the "Default Notice"), the Defendants were provided written notice of the defaults above, and the Bank demanded immediate payment in full of all amounts due under the Bond. A true and correct copy of the Default Notice is attached hereto as **Exhibit 23**.

**Amounts Due**

44. Under the terms of the Loan Documents, interest began accruing under the Bond at the default rate upon maturity.

45. As of March 24, 2017, the following sums (among others) are due and owing to the Bank by Badgerow, Mako, and DeBolt, (jointly and severally, the "Obligors") under the Bond:

| | |
|---|---|
| Principal: | $4,167,150.00 |
| Interest:[1] | $120,104.13 |
| Protective Advances: | $115,084.17 |
| **Total:** | **$4,402,338.30** |

Additionally, interest continues to accrue under the Bond at the default rate from and after March 25, 2017, at the current rate of 10%, i.e., $1,157.54 per day.

46. In addition to the foregoing sums, the Bank is entitled to recover from the Obligors all collection costs associated with the Loan Documents, including, without limitation, attorneys' fees and costs, which have accrued and which will continue to accrue in connection with and as a result of defaults under the Loan Documents.

**General Allegations**

47. The Obligors had information of and a reasonable opportunity to pay the indebtedness under the Bond before the Bank brought this action.

48. The Property is not used for agricultural purposes as defined in Iowa Code section 535.13, is not the residence of any defendant, and is not a one-family or two-family dwelling.

49. The liens, mortgages, rights, titles, and interests of the Defendants are junior and inferior to the liens, mortgages, rights, titles, and interests of the Bank.

50. The Bank is entitled to foreclose its Mortgage pursuant to Iowa Code Sections 654.20 through 654.26.

---

[1] This amount includes default interest, which began to accrue upon maturity and which will continue to accrue.

## COUNT 1
## BREACH OF CONTRACT AGAINST BADGEROW UNDER THE BOND AND INDENTURE

51.  The Bank restates, realleges and incorporates all of the preceding paragraphs.

52.  Badgerow is in default under the Bond and Indenture. All amounts due and owing by Badgerow under the Bond and Indenture are past due. Badgerow has failed to pay the amounts due under the Bond and Indenture. As a result, Badgerow is in breach of contract and the Bank is entitled to judgment against the Borrower for all amounts due and to become due under the Bond and Indenture.

## COUNT 2
## BREACH OF CONTRACT AGAINST DEBOLT UNDER THE DEBOLT GUARANTY

53.  The Bank restates, realleges and incorporates all of the preceding paragraphs.

54.  DeBolt guarantied payment and performance of the Bond pursuant the DeBolt Guaranty. Badgerow failed to pay and perform under the Bond, and DeBolt failed to perform under the DeBolt Guaranty. As a result, DeBolt is in breach of contract under the terms of the DeBolt Guaranty, and the Bank is entitled to judgment against DeBolt for all amounts due and to become due under the Bond and the DeBolt Guaranty.

## COUNT 3
## BREACH OF CONTRACT AGAINST MAKO UNDER THE MAKO GUARANTY

55.  The Bank restates, realleges and incorporates all of the preceding paragraphs.

56.  Mako guarantied payment and performance of the Bond pursuant the Mako Guaranty. Badgerow failed to pay and perform under the Bond, and Mako failed to perform under the Mako Guaranty. As a result, Mako is in breach of contract under the terms of the Mako Guaranty, and the Bank is entitled to judgment against Mako for all amounts due and to become due under the Bond and the Mako Guaranty.

## COUNT 4
## FORECLOSURE OF THE FEE MORTGAGE

57. The Bank restates, realleges and incorporates all of the preceding paragraphs.

58. The Fee Mortgage provides that upon a default, the Bank is entitled to foreclose the Fee Mortgage. Defaults under the Fee Mortgage have occurred.

59. Pursuant to Division XI of the Iowa Rules of Civil Procedure, the Bank is entitled to, and hereby seeks a determination of the construction of the contracts and legal relations between the parties as it relates to the Loan Documents, liens, collateral, and a declaration of the rights, status, legal relations, obligations, and remedies of the parties thereto, including without limitation a judgment finding that the Bank is entitled to enforce its Fee Mortgage and security interests in the Property and the other collateral described above according to the terms thereof and Iowa law (including the Uniform Commercial Code), and that nothing in this action will constitute waiver of or in any way impair the Bank's rights and remedies under any of the Loan Documents, or as to the Property or any other collateral.

## COUNT 5
## FORECLOSURE OF THE LEASEHOLD MORTGAGE

60. The Bank restates, realleges and incorporates all of the preceding paragraphs.

61. The Leasehold Mortgage provides that upon a default, the Bank is entitled to foreclose the Leasehold Mortgage. Defaults under the Mortgage have occurred.

62. Pursuant to Division XI of the Iowa Rules of Civil Procedure, the Bank is entitled to, and hereby seeks a determination of the construction of the contracts and legal relations between the parties as it relates to the Loan Documents, liens, collateral, and a declaration of the rights, status, legal relations, obligations, and remedies of the parties thereto, including without limitation a judgment finding that the Bank is entitled to enforce its Leasehold Mortgage and security interests in the Property and the other collateral described above according to the terms thereof

and Iowa law (including the Uniform Commercial Code), and that nothing in this action will constitute waiver of or in any way impair the Bank's rights and remedies under any of the Loan Documents, or as to the Property or any other collateral.

### COUNT 6
### APPOINTMENT OF A RECEIVER

63. The Bank restates, realleges and incorporates all of the preceding paragraphs.

64. The Indenture (Section 8.02(vi)), the Fee Mortgage, (Section 2(d), 3(d), 25(e)), the Leasehold Mortgage (Section 2(d), 3(d), 25(e)), the Accounts Pledge (Section 4), the Assignment of Project Agreements (Section 6), and the Tax-Credits Pledge (Section 3), provide that, upon a default thereunder, the Bank shall be entitled, at its option, to the appointment of a receiver over the "Mortgaged Property" (as defined in the Fee Mortgage and referred to herein as the "Fee-Mortgaged Property") to, among other things, take charge of the collateral described in all the foregoing, including the Fee Property, Leasehold Property, the Accounts, the Project Documents, and the Tax Credits.

65. Defaults under the Loan Documents, including those above, have occurred.

66. As a result of the defaults, and in accordance with the terms of the Loan Documents, Iowa Code Chapter 680, and other applicable law, the Bank is entitled to the immediate appointment of a receiver over all collateral securing the Bond and Indenture (the "Receivership Property").

### COUNT 7
### REPLEVIN; CLAIM AND DELIVERY OF PERSONAL PROPERTY

67. The Bank restates, realleges, and incorporates the preceding paragraphs.

68. The Fee Mortgage provides that upon a default, the Bank is entitled to, among other things, repossess and foreclose on personal property constituting part of the Property. As detailed above, defaults have occurred. Because of the defaults, and under Iowa Code Chapter 643, Iowa

Code Section 554.9102 *et seq.*, and other applicable law, the terms of the Fee Mortgage, and applicable law, the Bank is entitled, at its option, to repossess and pursue its foreclosure rights with respect to any personal property constituting part of the Property.

69. All documents identified above that describe collateral securing the Bond and indenture (collectively, the "Security Documents") provide that upon a default, the Bank is entitled to, among other things, repossess and foreclose on, or directly collect, all the collateral described in the Security Documents. As detailed above, defaults have occurred. Because of the defaults, and in accordance with the Loan Documents, Iowa Code Chapter 643, Iowa Code Section 554.9102 *et seq.*, and other applicable law, the Bank is entitled, at its option, to repossess and pursue its foreclosure rights on, or to directly collect, all the collateral described therein.

## COUNT 8
## PRIORITY OF LIENS

70. The Bank restates, realleges and incorporates all of the preceding paragraphs.

71. The Security Documents create and evidence valid and enforceable liens against and security interests in all collateral described in the Security Documents.

72. The Defendants may claim or hold some interest in the collateral described in the Security Documents.

73. The Bank's liens against and security interests are prior and superior to any interest that the Defendants may claim in collateral described in the Security Documents, and the Bank is entitled to an order declaring it so.

WHEREFORE, the Bank demands judgment against the Defendants as follows:

A. As to Counts 1-3, money judgments against the Obligors, jointly and severally, for all amounts due and owing under the Loan Documents.

B. As to Count 4, 5, and 8, a decree and judgment *in rem* against all the Property, and a decree and judgment *in rem* as to the liens, mortgages, rights, titles, and interests of the parties in and to the Property, and that such judgment be decreed to be a superior lien upon the Property from the date of the Bank's Fee Mortgage and Leasehold Mortgage (the "Mortgages"); and that the liens, mortgages, rights, titles, and interests of the Defendants be declared to be junior and inferior to the lien of the Mortgages as hereinbefore set forth; that the rights of redemption, if any, of Mako, MT, or any other party be forever barred and foreclosed; that a special execution issue for the sale of all of the Property to satisfy the unpaid balance of the money judgment, costs and accruing costs; that the Court adjudge and decree that there be no redemption period after such sale, that the Sheriff of this County be directed to issue and deliver a Sheriff's Deed(s) to the purchaser(s) under the foreclosure sale, and that a Writ of Possession issue under the seal of this Court directed to the Sheriff of this County, commanding him to put the purchaser(s) under the foreclosure sale in possession thereof; that the Court appoint a receiver to take charge of the Property as provided by the Loan Documents and by law, during the pendency of this action and until the Property be sold; and for such other and further relief to which the Bank is entitled under the Loan Documents, and as the Court may deem just and equitable in the premises. The Bank further prays for judgment determining and declaring the rights, status, legal relations, obligations, and remedies of the Bank and the other parties, and enter judgment finding that the Bank is entitled to enforce its rights and interests in the Property according to the terms thereof and Iowa law (including the Uniform Commercial Code), and that nothing in this action will constitute a waiver of or in any way impair the Bank's rights and remedies under the Loan Documents or as to its collateral, including with respect to any of the Property.

C. As to Counts 6, appointing a receiver on such terms and for such purposes as shall be requested by the Bank.

D. As to Count 7, entering an order awarding to the Bank immediate and complete possession of all property described in the Security Documents, the Defendants to immediately deliver such property into the possession of the Bank, and authorizing the Bank to liquidate such property in accordance with the Loan Documents, Iowa Code Chapter 643, Iowa Code Section 554.9102 *et seq.*, and other applicable law.

Dated: April 14, 2017

MOORE, HEFFERNAN, MOELLER, JOHNSON & MEIS, L.L.P.

*/s/ Richard H Moeller*
Richard H. Moeller #AT0005533
300 U.S. Bank Building
501 Pierce Street
P.O. Box 3207
Sioux City, Iowa 51102
RMoeller@mooreheffernanlaw.com
PHONE: 712-252-0020
FAX: 712-252-0656

-and-

WINTHROP & WEINSTINE, P.A.
Christopher A. Camardello, MN #284798, not yet admitted
Michael A. Rosow, MN #317998, not yet admitted
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
ccamardello@winthrop.com
mrosow@winthrop.com
PHONE: 612-604-6400
FAX: 612-604-6800

ATTORNEYS FOR PLAINTIFF

13325573v5